## YOUNGSTOWN SHEET & TUBE CO v REDOLPHI

Ohio Appeals, 7th Dist, Mahoning Co

Decided Oct 21, 1932

Manchester, Ford, Bennett & Powers, Youngstown, for plaintiff in error.

T. E. Antonelli, Youngstown, for defendant in error.

40

FARR, J.

It is .claimed that Redolphi was in the course of his employment and that he sustained such an injury as to entitle him to recover under the Workmens' Compensation Law. There are certain diseases which by statute are made compensable under the law, and there are certain other diseases, many of them, in fact, which are not compensable. In order to recover it must necessarily be shown that the decedent sustained an accidental injury.

There is some assistance in this behalf by the interpretation of the Supreme Court of Ohio of certain parts of the Workmens' Compensation Law. A case to which attention was called is that of **Industrial Commission v Cross et, 104 Oh St, 561.** In the third paragraph of the syllabi it is held:

"The term 'injury' as used in §1465-68, GC, does not include diseases which are contracted, as distinguished from diseases which are occasioned by or follow as a result from physical injury."

It is claimed in this case that the injuries sustained by the decedent were in the course of his employment, and that pneumonia, of which he died, resulted from some injury. In the Cross case it is said that in the course of employment an employe contracted typhoid fever. After the death an effort was made to collect compensation and it was held by the Supreme Court that the death in this case was not compensable. The opinion in the case is by Robinson, J., and at page 563 it is said in the opinion of the court:

"An injury or death resulting from disease contracted in the course of such employment, known as an occupational disease, is not such as contemplated by the provisions of the act referred to, and cannot be made the basis of a claim for compensation from the insurance fund so provided."

Again, it is observed on page 565 in the the same opinion;

"That a disease is an injury must be conceded, but by the same token it must also be conceded that an occupational disease is an injury. The constitution makers, however, did not regard occupational disease as included in the term 'injury' and so added it by specific designation. If, then, occupational deceases, which, experience has demonstrated, follow certain occupations with certainty to a considerable proportion of the persons so occupied, are excluded from the meaning of the term 'injury', by what process of reasoning can we say that they intended to include diseases which occasionally occur without intending to include diseases which regularly occur."

But the most persuasive and enlightening paragraph of the opinion so far as the instant case is concerned, is found at page 566, as follows:

"But in view of the constitutional interpretation, in view of the fact that during the eight years that the compulsory compensation law has been in force, the industrial commission has given the term 'injury' an interpretation which excludes diseases which are contracted, as distinguished from diseases which are occasioned by or follow as a result of some physical injury, and in view of the fact that to interpret the term 'injury' as including diseases generally would enlarge the scope of disabilities compensable to such an extent as to either bankrupt the fund or require a complete readjustment of premiums upward, we hold that if the scope of cases compensable is to be extended it should be done by unambiguous legislative enactment rather than by judicial construction. For it must be recognized that if the term 'injury' is to be construed to include typhoid fever contracted in the course of employment, it may well include influenza, pneumonia, tuberculosis, smallpox, ordinary colds, rheumatism and practically every disease which may be contracted by workmen in the course of employment, and the workmens' compensation department will become a health and life insurance department for workmen, compulsorily supported by employers, and the constitutionality of the whole scheme endangered."

In the instant case the record discloses that the decedent on this morning of the 13th of January, after working four and three-quarter hours, became ill. He was taken to the emergency hospital and there

his disease or illness was diagnosed as pneumonia. From there he was taken to his home and in three or four days the story had been told and he died of pneumonia. But what is the physical injury that superinduced the pneumonia? The record is wanting in that behalf. Evidently it was just a clear case of pneumonia.

Attention was called to the case of Tolson v Industrial Commission, a case decided by this court some one or two years since. Tolson was employed in a coal mine near the village of Salineville, the entrance being in Carroll County and the workings perhaps in Columbiana County. He was a miner engaged in the ordinary work of the mine. He prepared, and then in the common parlance of mining life, he shot down the coal. On the day in question he went to the mine, pursued his work as usual, shot down the coal, which resulted in a considerable amount of powdered smoke. Tolson became ill after going into the room where the coal was shot down. He left the mine and on the way home he stopped at the office of Dr. McCullough in Salineville, and Dr. McCullough told him he was suffering from monoxide gas poisoning. That was about the 5th or 6th of October, and Tolson died on the 12th, as a result of monoxide gas poisoning, the red corpuscles of his blood turning to a whitish color, but how very different from the facts of the instant case. It was the shooting of the coal which with the production of black powder smoke which the experts said produced monoxide gas, poisoning in a greater or less degree, that produced the injury to Tolson, all medical authorities agreeing that the effect of monoxide gas poisoning is to destroy the red corpuscles of the blood so that the victim becomes sort of anaemic, but perhaps that would not be the medical term, and the result of that blood infection is observable upon the heart, upon the breathing of the victim, so that the disease progresses until death intervenes as a matter of relief, but in the instant case the decedent had pneumonia. He was taken ill of pneumonia. He died of pneumonia a few days later. It is not a compensable disease. Another case of interest is **Rankel v The Industrial Commission of Ohio, 109 Oh St, 152,** and still another is **Industrial Commission v Russell, 111 Oh St, 692, 694.**

Therefore, the conclusion must be that the judgment is contrary to law, and a final judgment will be entered in behalf of the plaintiff in error.

Judgment reversed.

ROBERTS and POLLOCK, JJ, concur.