MARGARET JOYCE ET AL. v. LUSE-STEVENSON COMPANY and EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY, Appellants.—139 S. W. (2d) 918.

Division One, May 7, 1940.*

*NOTE: Opinion filed at September Term, 1939, March 6, 1940; motion for rehearing filed; motion overruled at May Term, 1940, May 7, 1940.

*E. C. Friedewald* and *Moser, Marsalek & Dearing* for appellants.

60

*Robert E. Hannegan* and *Martin A. Rosenberg* for respondents.

HAYS, J.—Appellant, the Luse-Stevenson Company, was the employer of Anthony Joyce, deceased. Appellant Employers Mutual Liability Insurance Company was its compensation insurance carrier. Respondent Margaret Joyce is the dependent widow of Joyce, and the remaining respondents are his minor children. Appellants seek review of a decision of the circuit court of the city of St. Louis affirming an award of the Missouri Workmen's Compensation Commission in favor of respondents based upon the death of Anthony Joyce. ■ The amount of the award was $20 per week for 461.5 weeks, together with hospital, medical and funeral expenses. Hence it exceeds the sum of $7500 required to give us jurisdiction on appeal. [Shroyer v. Missouri Livestock Commission Company, 332 Mo. 1219, 61 S. W. (2d) 713.] ■ On an appeal in this character of case we treat the commission's findings of fact as having the force and effect of a jury verdict. Conflicts in the evidence must therefore be resolved in such a manner as to sustain the commission's findings. Viewed in this light the record shows the following facts:

The employer was a subcontractor engaged in the construction of the New Post Office Building, 18th and Market streets, St. Louis. Deceased, a plasterer, was employed in putting concrete waterproofing material on the walls of a subbasement and on certain pits and de-

pressions below its floor. The walls of the building proper extended only to the ground floor level, and a considerable amount of seep water had gotten into the subbasement, covering a large part of the floor thereof. Although a platform was provided for the workmen, it was necessary for them to get their feet and the lower portions of their legs wet. For several weeks deceased had been working above the water level but he spent his last two working days in the subbasement. On and prior to the evening of October 1, 1936, deceased was apparently in his usual health. On that evening he went with a friend to a union meeting. The next morning he arose and went to work. Witnesses noticed that during the afternoon he seemed not to be working as vigorously as usual and did not talk as much as was his custom. When he went home on the night of the 2nd of October, he did not eat his evening meal, complained of not feeling well and lay down. During the night he became acutely ill. He was treated for a few days at home; but, as his condition grew worse, a doctor was called. This physician diagnosed his case as lobar pneumonia. On the 12th of October deceased was taken to the De Paul Hospital where he remained until his death on the 11th day of December, following. The cause of his death is given as lobar pneumonia complicated by empyema and coronary embolism.

For more than a year before the onset of the disease which caused his death deceased had been losing weight. Examination after his admission to the hospital, confirmed by post-mortem, showed that he had suffered from thyroid trouble and had a bad heart. His general condition of health was said to be favorable for the contraction of pneumonia.

The testimony of experts included in the record discloses that pneumonia is an inflammatory condition of the lungs usually caused by pneumococci organisms. An individual may be predisposed to the attack of these bacilli by having his bodily resistance lowered. Such lowering of resistance can be brought about through exposure. Sometimes this result will follow a single experience lasting for only a few minutes. Again it may be the cumulative effect of conditions experienced by the patient over a considerable period of time. The experts called by the claimant stated that it was possible for deceased to have contracted pneumonia as a result of working in the damp conditions above described. They also stated on cross-examination that it would have been possible for deceased to have contracted the disease in riding home from work in an automobile or because he had caught a cold at the union meeting.

On trial it was expressly stipulated that the claimant did not seek to recover upon any theory that deceased's pneumonia was an occupational disease; but solely upon the theory that deceased contracted pneumonia as the result of an industrial accident. Our consideration is therefore limited to those provisions of the compensation act which

deal with injuries and death caused by accident arising out of and in the course of employment to the exclusion of those provisions which deal with occupational disease.

Two questions are raised. (1) Was there an accident within the meaning of that term as used in the compensation act? (2) If so, is there any substantial evidence in the record to support the commission's finding that such hypothesized accident was the proximate cause of the pneumonia which admittedly brought about Joyce's death?

Section 3305 (b), R. S. Mo. 1929, defines accident as used in the compensation law to mean: "An unexpected or unforseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury." The same section defines injuries as "violence to the physical structure of the body and such disease or infection as naturally results therefrom." The section then provides that these terms "shall in no case be construed to include occupational disease in any form, nor shall they be construed to include any contagious or infectious disease contracted during the course of the employment, nor shall they include death due to natural causes occurring while the workman is at work." The event which constitutes an accident is thus clearly a happening or occurrence in part at least external to the body itself. The physiological changes which may result in the workman's own body are consequences of the accidental event. It has been held that the requirement of suddenness does not mean that the event must take place within a few seconds or even a few minutes of time. For example in the case of Lovell v. Williams Brothers, 50 S. W. (2d) 710, an injured condition of the employee's hand, produced by repeated strains from the use of a spade in cutting tree roots over several days' time, was held to be accidental.

The courts of this state have also held that injuries or death caused by excessive heat or excessive cold to which a workman is exposed because of his employment to a greater degree than are the other members of the community are compensable under the compensation law. [Schulz v. Great Atlantic & Pacific Tea Co., 331 Mo. 616, 56 S. W. (2d) 126.] On the other hand, in all of these cases there is present some abnormal and unforeseen condition in the employment arising more or less suddenly which can be pointed out as a definite positive factor of the compensated injury or death.

Two decisions of the Kansas City Court of Appeals have discussed the question of compensability of death resulting from pneumonia. In Rinehart v. Stamper Co., 227 Mo. App. 653, 55 S. W. (2d) 729, plaintiff sued his employer at common law, alleging in his peition that he was required by his employer to go into a cold storage compartment where a subzero temperature was maintained at a time when he had gotten hot and was perspiring; that as a result thereof he contracted

pneumonia. A demurrer to the petition was sustained upon the theory that plaintiff's contracting of pneumonia was a compensable accident and that the sole jurisdiction over the same was in the compensation commission. This ruling of the trial court was sustained by the Kansas City Court of Appeals. It is to be noted, however, that plaintiff's disease was there said to have resulted from the single act of going into the cold storage room at a time when plaintiff was hot and perspiring.

In Carter v. Priebe & Sons, 77 S. W. (2d) 171, an employee had been working as a chicken picker for sometime. For about a week prior to the last day of his work he had had a cold. He worked in a large room with a number of other persons killing, scalding and picking chickens. In doing this he would splash water on his clothes. He would then go from the warm picking room into a cooler which was kept at low temperature. The employee contracted pneumonia because of these conditions. The Court of Appeals, in holding that the case was not within the compensation law, said: "Now the evidence does not disclose any unusual or unexpected event happening suddenly and violently to cause the disease which overtook employee, and the statute expressly says, as just quoted, that it shall not be 'construed to include any contagious or infectious disease contracted during the course of the employment.' . . . We think the commission's finding and award cannot be disturbed, not only because its finding had support in the facts before it, but also because the nature of the alleged claim is not compensable under the act."

Many cases are to be found in which pneumonia was caused by a sudden traumatic injury to an employee clearly constituting an accident. [Folts v. Robertson, 188 App. Div. 359, 177 N. Y. Supp. 34; Tanner v. Aluminum Castings Co. (Mich.), 178 N. W. 69.] But where, as here, the disease resulted from exposure in the ordinary course of the employee's work, the weight of authority is to the effect that the disease is not compensable. [Lang v. Gage County Electric Co. (Neb.), 275 N. W. 462; Blair v. Omaha Ice & Cold Storage Co., 102 Neb. 16, 165 N. W. 893; Slade v. Willis Hosiery Mills, 209 N. C. 823, 184 S. E. 844; Paxton v. Spicer Manufacturing Corporation, 45 Ohio App. 359, 187 N. E. 193; Industrial Commission v. Brumm, 130 Ohio St. 248, 198 N. E. 863; Poklembo v. Hazle Brook Coal Co. (Pa.), 176 Atl. 850.]

Two English cases bring out the distinction clearly. In Coyle v. Watson (1915), App. Cases 1, 41 A. L. R. 1128 note, claimant was a miner and because of a breakdown in the shaft in which he was working he was forced to go into another where he was subjected to a sudden blast of cold air causing him to contract pneumonia. The House of Lords held that a compensable accident had taken place. But in Lyons v. Woodilee Coal Co. (1917), 86 L. J. P. C. N. S. 137, 41 A. L. R. 1128, the same tribunal held that a miner, who had con-

tracted pneumonia because of the ordinary damp and drafty conditions under which he worked, was not entitled to compensation therefore.

From these considerations we are of the opinion that there was no accident within the meaning of the compensation act shown in the present case.

It follows that it is unnecessary to answer the second question raised in the briefs of counsel as to whether the evidence tends to show a causal connection between the exposure of deceased to dampness while at work and the disease which caused his death.

The judgment of the circuit court should be reversed. It is so ordered. All concur.